NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEVIN FORD, | Civil Action No. 17-4864 (JMV) |
| Plaintiff, | |
| v. | OPINION |
| ESSEX COUNTY JAIL, *et al.*, | |
| Defendants. | |

Plaintiff Kevin Ford ("Ford"), a pretrial detainee held in Essex County Correctional Facility ("ECCF"), initiated this civil rights action on June 30, 2017. (ECF No. 1.) The Court granted Ford's application to proceed *in forma pauperis* under 28 U.S.C. § 1915. (ECF No. 2.)[1] Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court must now review the Complaint and dismiss the claims if it finds that the action is: (1) frivolous or malicious; (2) fails to state a claim upon which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. Ford's application for appointment of pro bono counsel (ECF No. 3) is also before the Court.

I. DISCUSSION

A. *Sua Sponte* Dismissal

Under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), district courts must review complaints filed by prisoners in civil actions and dismiss any claim that is frivolous or malicious, fails to state

---

[1] After the Court granted Ford's IFP application, allowing him to proceed without prepayment of the filing fee, Ford submitted the $350.00 filing fee. The Court will direct the Clerk to return the filing fee to Ford because installment payments from his prisoner trust account have already been put in place.

a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556.)

"[A] court must accept as true all of the allegations contained in a complaint[.]" *Id.* Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. *Id.* Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002).

Courts must also liberally construe pleadings that are filed *pro se*. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Thus, "a pro se complaint, however inartfully pleaded, must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (internal quotation marks omitted). "Court personnel reviewing pro se pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making." *See Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339-40 (3d Cir. 2011) (quoting Jonathan D. Rosenbloom,

Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in the Southern District of New York, 30 Fordham Urb. L.J. 305, 308 (2002)).

B. The Complaint

Ford alleges the following facts,[2] which are accepted as true solely for purposes of screening the Complaint. Ford was arrested on November 12, 2016, after his release from "NJUMD."[3] (ECF No. 1, ¶6.) He was processed into ECCF as a pretrial detainee. (*Id.*) Upon intake he notified "Medical" that he was 54-years old and had "a lower back problem" and "a sciatic nerve issue." (ECF No. 1-5 at 6, ¶9.) Ford was assigned to a top bunk in the Special Housing Unit until he was medically cleared. (ECF No. 1, ¶6.) When he jumped off the bunk, he jammed his hip bone and spine. (*Id.*)

Ford was reassigned to Cell 3E1-108, where he was also assigned a top bunk. (ECF No. 1-5, ¶8c) There is no ladder or other safety device to climb up or down from the bunk, only a four or five foot high steel stool cemented to the floor. (ECF No. 1, ¶6.) Ford injured his hip and spine getting down from the bunk. (*Id.*) Although he had a preexisting lower back and sciatic nerve condition, climbing in and out of the top bunk exacerbated his injury. (ECF No. 1-5 at 6, ¶¶8c, 9.)

Ford alleges Warden Charles Green failed to prevent or protect him from pain and suffering "by not changing a harmful condition contributed to physical health and safety. Did not appropriately monitor Depts. under his control as warden of Essex County Jail even though Medical is under private contract." (ECF No. 1 at 4, ¶4b.) Ford sent Green copies of his grievances, and Green failed to rectify the inadequate healthcare provided in the jail. (ECF No. 1-5 at 4, ¶5.)

---

[2] The Court quotes from the Complaint without making edits for grammar.

[3] The Court assumes NJUMD stands for New Jersey University of Medicine and Dentistry.

Ford sued Dr. O'Conner and Dr. Risbey, who work for Center Family Group ("CFG") and are contracted by Essex County Jail to provide medical care to the inmates. (ECF No. 1 at 4, ¶4c.) Ford contends Drs. O'Conner and Risbey:

> [w]ere involved in medical evaluation, observation, prescribing treatment, medications, failing to provide appropriate and effective medical care, denying us to providing effective medical care and delay treatment to serious medical need.

(*Id.*) Additionally, Ford alleges Dr. O'Conner abused Ford by "throwing, slinging, pushing and violently shoving his left leg and back while allegedly examining him on or about 4/24/2017 at the Medical Infirmary at E.C.J." (ECF No. 1-5 at 1, ¶4b.) Dr. O'Conner also refused to treat Ford's left hand because Ford complained that the Newark Police caused nerve damage when handcuffing him. (ECF No. 1-5 at 1-2, ¶4b.)

On April 25, 2017, Ford was given an emergency sick call, but it was hours before he received medical attention. (ECF No. 1-5 at 5, ¶6.) Dr. O'Conner referred Ford to East Orange General Hospital on April 28, 2017 because Ford could not walk. (ECF No. 1-5 at 2, ¶4b.) Ford underwent a CT scan, the results of which prompted a doctor to request his immediate transfer to NJUMD for surgery to correct a condition affecting Ford's sciatic nerve, followed by 90 days of rehabilitation to treat arthritis in Ford's left hip and leg. (*Id.*) The transporting officer would not transfer Ford to NJUMD because it was Friday, and no medical staff would be available over the weekend. (*Id.*) Ford was given a referral to NJUMD for an MRI, surgical consultation, 90 days of therapy, and a prescription for oxycodone, Flexeril and Motrin for pain management. (*Id.*)

Dr. Risbey changed Ford's medications to save money, despite Ford's complaints of the ineffectiveness of the medication Risbey prescribed. (*Id.*) Ford was then taken off a muscle relaxer before the prescription ran out. (*Id.* at 2-3, ¶4b.) Ford's developed new symptoms of a numb feeling in his left groin and left pelvis. (*Id.*)

4

Ford was sent to East Orange General Hospital for an MRI on June 6, 2017. (ECF No. 1-5 at 6, ¶10.) Dr. Risbey told Ford his MRI did not show anything wrong, but Dr. O'Conner told him he had a spinal hemorrhage. (*Id.*) A physician at East Orange General Hospital told Ford "that either a needle in [his] spine can be used to prolong the surgery or [he] can get the surgery and pumped with heavy pain relieving narcotics." (*Id.*) On June 9, 2017, Ford "was sent to East Orange General" and "pumped with heavy narcotic meds for pain management," and upon release, he received another prescription for medication and referral for surgery. (*Id.* at 9, ¶15a.)

On June 12, 2017, when Ford complained to Dr. Risbey about his dissatisfaction with his medical care, and complained that CFG was ignoring the referrals by East Orange General Hospital, Dr. Risbey suggested that Ford "go run his head into a wall." (*Id.* at 7-8, ¶¶13a, 13b.) Drs. O'Connor and Risbey threatened to retaliate against Ford for complaining. (*Id.* at 3, ¶4b.) Their denial of Ford's referral to NJUMD contributed to and prolonged Ford's excruciating pain in his back, spine, hip, left hand, left leg, left foot, pelvis and groin. (*Id.* at 8, ¶14.)

Ford alleged:

> Each East Orange General referral resulted in acknowledgment of serious medical needs and surgery to be performed at NJUMD, said information was provided to Essex County Jail Healthcare Provider each time but they delayed service to injury.

Ford also sues three nurses employed by CFG: Nurse April, Nurse Davis, and Nurse Mary. (*Id.* at 6, ¶10.) He alleges:

> Nurse April, Nurse Davis have threatened to remove Plaintiff from infirmary if he complain[s] that they are casually withholding his prescribed meds pain pills. Doing so was because he continued to have his family call the Jail and complain about poor medical care. Nurse Davis on June 3, 2017 told Plaintiff since he won[']t get up out [of] the bed and he likes to complain she'll find a way to cause bad pain and suffering by holding back on meds. Nurse April has been doing the same thing when her shift is on. June 3, 2017 Nurse

5

> Mary joined the conspiracy and limited my meds from three (3) a day to twice (2) a day.

(ECF No. 1-5 at 3, ¶4b).

Ford also named County Executive Joseph N. Divincenzo as a defendant because he "allowed CFG to provide healthcare coverage upon contractual agreement." (ECF No. 1-5 at 5, ¶7.) Divencenzo knew that failure to provide appropriate and effective medical care contributed to Ford's pain and suffering. (*Id.*) He further alleged that Divincenzo "failed to create an effective monitoring system to ensure that inmates at Essex County Jail . . . are being provided with standard of care that would prevent pain and suffering." (ECF No. 1-5 at 1, ¶4b.)

Finally, Ford alleged Divincenzo "contracted the construction of Essex County Correctional Facility to a construction company along with the architectural design of 354 Doremus Ave., Newark New Jersey 07105 so he has knowledge of how the inmate housing pods/unit and department would look and operate." (ECF No. 1-5 at 4, ¶6.) Ford described the housing units and cells, concluding that the layout created a risk of injury for inmates who had to get in and out of the top bunk. (*Id.* at 5-6, ¶¶8a-c.) Warden Green and Executive Divincenzo were aware of these conditions through inspections of the facility. (*Id.*, ¶8.)

Under the heading "Party to Complaint 'Defendant,'" Ford listed CFG Chief Executive Officer Les Paschall, and East Orange General Hospital. (ECF No. 1-5 at 3, ¶4b.) Ford did not make any specific allegations as to Paschall. With respect to East Orange General, Ford alleged that the white male [designated "John Doe"] who told Ford of his injury on June, 9, 2017, and the white female [designated "Jane Doe"] who told Ford of his injury on April 28, 2017, failed to convince the jail officials of the importance of the prescribed medication and surgery. (ECF No. 1-5 at 9, ¶¶15a-c.) Ford seeks monetary damages and injunctive relief. (ECF No. 1 at 6, ¶7.)

C. Analysis

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for violations of his constitutional rights by a state official or employee. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255–56 (3d Cir. 1994).

1. State Actor Requirement

Ford failed to allege facts suggesting that employees of East Orange General Hospital are state actors for purposes of 42 U.S.C. § 1983. Even assuming Ford could allege such facts in an amended complaint, his allegations against John Doe and Jane Doe fail to state a constitutional violation. Ford alleges the Doe Defendants failed to stress the importance of their referral for an MRI and surgical evaluation. There is no legal obligation of one medical provider to convince another medical provider to accept a recommended course of action. *See White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) ("no claim is stated when a doctor disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness.") This allegation does not rise to the level of medical malpractice, let alone deliberate indifference to a serious medical need. Therefore, the claims against John and Jane Doe employees of East Orange General Hospital are dismissed with prejudice.

2. Conditions of Confinement

Ford contends that the layout of the cells at ECCF creates a risk of injury to inmates assigned to top bunks and that he exacerbated his back injury by climbing in and out of the top bunk without a ladder. When a pretrial detainee alleges unconstitutional conditions of confinement in violation of the Due Process Clause of the Fourteenth Amendment, the Third Circuit Court of Appeals has set forth a two-step test to analyze the claim. *Hubbard v. Taylor* ("*Hubbard I*"), 399 F.3d 150, 159-60 (3d Cir. 2005).

> [W]e must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes. In assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions "cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." [*Union County Jail Inmates v. DiBuono*,] 713 F.2d [984], 992 [3d Cir. 1983] (citing *Bell [v. Wolfish*], 441 U.S. [520] 542, 99 S.Ct. 1861 [1979]) (internal quotation marks omitted). Our inquiry into whether given conditions constitute "punishment" must therefore consider the totality of circumstances within an institution. *Id.* at 996; *see also Jones v. Diamond*, 636 F.2d 1364, 1368 (5th Cir.1981) ("In determining whether conditions of confinement are unconstitutional under ... the fourteenth amendment, we do not assay separately each of the institutional practices, but look to the totality of the conditions."), *overruled in part on other grounds, Int'l Woodworkers of America, AFL–CIO v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir.1986) (en banc).

*Hubbard I*, 399 F.3d at 159-60. To state a constitutional violation, a plaintiff must allege facts suggesting the conditions of confinement were severe enough to deprive him of a basic human need. *Wilson v. Seiter*, 501 U.S. 294, 305 (1991).

Not having a ladder to climb into the top bunk is not a condition severe enough to deprive an inmate of a basic human need. The "Constitution does not mandate comfortable prisons."

8

*Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). The conditions of confinement claims based on access to the top bunk are dismissed with prejudice because amendment is futile.

###    3. Inadequate Medical Care Claims

A pretrial detainee's claims of inadequate medical care arise under the Due Process Clause of the Fourteenth Amendment. *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). However, "the Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner,' without deciding whether the Fourteenth Amendment provides greater protections." *Id.* (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) (quoting *Ingraham v. Wright*, 430 U.S. 651, 671–72 n. 40 (1977)).

> In assessing a pretrial detainee's claim that he was denied medical care, the relevant inquiry is whether the alleged denial was "imposed for the purpose of punishment or whether it [was] but an incident of some other legitimate governmental purpose." *Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005) (quoting *Bell v. Wolfish*, 441 U.S. 520, 538, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). For a denial of medical care to constitute a violation of the Fourteenth Amendment, the [plaintiffs] must demonstrate: "(i) a serious medical need, and (ii) acts or omissions by [the Named Officers] that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

*Mattern v. City of Sea Isle*, 657 F. App'x 134, 138 (3d Cir. 2016). The Court noted "[t]here is an open question of 'how much more protection unconvicted prisoners should receive' under the Fourteenth Amendment'" but did not decide "whether the Due Process Clause provides additional protections to pretrial detainees beyond those provided by the Eighth Amendment" because the issue was not raised on appeal. *Id.* at 138 n.5 (citations omitted).

Therefore, "for a denial of medical care to constitute a violation of the Fourteenth Amendment, [a plaintiff] must demonstrate: '(i) a serious medical need, and (ii) acts or omissions

9

by [the Named Officers] that indicate deliberate indifference to that need.'" *Id.* at 138 (quoting *Natale*, 318 F.3d at 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)))." "[A] medical need is "serious" for purposes of a denial of medical care claim if it is either 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* at 139 (quoting *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981)).

The second requirement of a Fourteenth Amendment inadequate medical care claim is that the defendant(s) acted with deliberate indifference, in other words, "he or she "knows of and disregards an excessive risk to [a complainant's] health or safety." *Id.* at 140 (quoting *Natale* at 582) (additional citations omitted)). For claims evaluated pursuant to Eighth Amendment standards, deliberate indifference is a "subjective standard of liability" and thus a defendant cannot be held liable unless he or she "knows of and disregards an excessive risk to [a complainant's] health or safety." *Id.* (citations omitted). Deliberate indifference is "evident" where: "(i) the denial of reasonable requests for medical treatment [] expose the complainant to undue suffering; (ii) knowledge of the need for medical care and the intentional refusal to provide such care; or (iii) the delay of necessary medical treatment for non-medical reasons." *Id.* at 139 (citing *Lanzaro*, 834 F.2d at 346–47).

When Ford entered ECCF in November 2016, he reported during intake that he suffered a lower back problem and a sciatic nerve issue. He did not have a serious medical need at that time because he has not alleged his condition was one diagnosed by a physician as requiring treatment nor was it so obvious that a lay person would easily recognize the need for medical attention. The same is true of Ford's complaint regarding nerve damage in his hand from being handcuffed.

10

Again, he did not alleged that the nerve damage had been diagnosed by a physician or that it was obvious to a lay person.

On April 28, 2017, Ford alleges he had a CT scan at East Orange General Hospital, where a doctor prescribed narcotic pain medication and requested to transfer Ford to NJUMD for surgery. When Ford was not transferred, the doctor gave Ford a referral for an MRI and surgical evaluation at NJUMD. After this medical evaluation, Ford had a cognizable serious medical need.

### a. Dr. Risbey and Dr. O'Conner

The following allegations are insufficient to support a Fourteenth Amendment inadequate medical care claim against Dr. Risbey and Dr. O'Conner. Ford alleged Dr. O'Conner abused him by "throwing, slinging, pushing and violently shoving his left leg and back while allegedly examining him on or about 4/24/2017 at the Medical Infirmary at E.C.J." (ECF No. 1-5 at 8, ¶14.) Allegations of medical malpractice or disagreement as to proper medical treatment are insufficient to establish a constitutional violation. *See Brown v. Deparlos*, 492 F. App'x 211, 216 (3d Cir. 2012) (allegation that physician violently twisted the plaintiff's head while the plaintiff was having a muscle spasm during a physical examination did not demonstrate deliberate indifference or unnecessary and wanton infliction of pain).

Ford alleged Dr. Risbey substituted different medications from those prescribed by the medical provider at East Orange General Hospital to save the County money, although he knew the medication was ineffective. "[N]o claim is stated when a doctor disagrees with the professional judgment of another doctor." *White*, 897 F.2d at 110. In order to state a constitutional claim where a prison doctor has substituted for a medication prescribed by another physician, a plaintiff must plead facts that a prior doctor "ordered a particular treatment exclusively or that the prison doctor insisted on continuing courses of treatment that the doctor knew were painful, ineffective or

11

entailed substantial risk of serious harm to prisoners." *Id.* at 110-11. Ford's allegation that Dr. Risbey knew the medication he prescribed was ineffective is too conclusory and lacking plausible factual support to establish deliberate indifference. Ford may be able to amend the complaint to include additional facts to establish that Dr. Risbey insisted on continuing a course of treatment that the doctor knew was ineffective.

On June 12, 2017, when Ford complained to Dr. Risbey about his dissatisfaction with his medical care, and complained that CFG was ignoring the referrals by East Orange General Hospital, Dr. Risbey suggested that Ford "go run his head into a wall." (*Id.* at 7-8, ¶¶13a, 13b.) "Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983." *Stokes v. Lanigan*, Civ. No. 12-1478 (PGS), 2012 WL 4662487, at *7 (D.N.J. Oct. 2, 2012) (collecting cases). Thus, and assuming for purposes of screening that Dr. Risbey made the unprofessional statement, the statement does not give rise to a cognizable cause of action.

Ford's central claim against Drs. Risbey and O'Conner is that they would not act on the referrals made by the doctors at East Orange General Hospital after the hospital physicians conducted a CT scan on Ford's back and/or hip. Ford does not allege that Dr. Risbey or Dr. O'Conner refused to treat his condition, but instead he disagrees with their decision not to act on the referrals made at East Orange General Hospital. A prisoner can state a constitutional claim by alleging that a prison doctor intended to inflict pain without medical justification by plausibly claiming a large number of "specific instances in which the doctor allegedly insisted on continuing courses of treatment that the doctor knew were painful, ineffective or entailed substantial risk of serious harm to prisoners." *White*, 897 F.2d at 109. However, in the case of medical judgment, "[i]f the doctor's judgment is ultimately shown to be mistaken, at most what would be proved is medical malpractice, not [constitutional] violation." *Id.* at 110. Moreover, as noted, one physician

is not required to accept the recommendation of another doctor. The Court dismisses the Fourteenth Amendment inadequate medical care claims against Dr. Risbey and Dr. O'Conner without prejudice.

        b.        Nurses April, Davis and Mary

Ford's allegations that Nurse April, Nurse Davis, and Nurse Mary ("the Nurse Defendants") withheld his prescribed medications for non-medical reasons may proceed as an inadequate medical care claim under the Fourteenth Amendment.[4] *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) ("unnecessary and wanton infliction of pain" rises to the level of a constitutional violation) (quotations omitted). Ford should be aware that he is unlikely to obtain service of the summons and complaint without providing the full names of the defendants, which he can do by amending the complaint.

        c.        Warden Green and Executive Divincenzo

Ford seeks to hold Warden Charles Green liable for failing to "monitor Depts. under his control as warden of Essex County Jail even though Medical is under private contract." (ECF No. 1 at 4 ¶4b.) He further seeks to hold Green liable for failing to rectify inadequate healthcare provided in the jail after receiving Ford's grievances.

Ford also named County Executive Divincenzo as a defendant because Divincenzo "allowed CFG to provide healthcare coverage upon contractual agreement." (ECF No. 1-5 at 5, ¶7.) Divencenzo knew that failure to provide appropriate and effective medical care contributed to Ford's pain and suffering, according to Ford. He further alleged that Divincenzo "failed to

---

[4] The Court makes this finding solely for screening purposes and based on Plaintiff's allegations. Nothing in this Opinion prevents any Defendant from litigating the matter as he or she sees fit, including making a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) if he or she deems it appropriate.

create an effective monitoring system to ensure that inmates at Essex County Jail . . . are being provided with standard of care that would prevent pain and suffering." (ECF No. 1-5 at 1, ¶4b.)

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal,* 556 U.S. at 676. However, "a supervisor may be personally liable ... if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Santiago v. Warminster Tp.*, 629 F.3d 121, 129 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). A supervisor may also be liable for an Eighth Amendment [or Fourteenth Amendment] violation if the plaintiff "identif[ies] a supervisory policy or procedure that the supervisor defendant failed to implement, and prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory procedure." *Barkes v. First Corr. Medical Inc.*, 766 F.3d 307, 330 (3d Cir. 2014) *reversed on other grounds by Taylor v. Barkes*, 132 S.Ct. 2042 (2015).

As to Warden Green, his alleged failure to rectify inadequate medical care after receiving Ford's grievances fails to state a claim. *See e.g., Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (per curiam) (allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the personal involvement of those officials in the underlying constitutional deprivation). Second, Ford's claims against Warden Green for "failing to monitor" the medical department, and his claim against Executive Divencenzo for failing to "create an

14

effective monitoring system to ensure that inmates . . . are being provided with standard of care that would prevent pain and suffering" are insufficient.

To state a supervisory liability claim Ford must allege how Green and Divencenzo were aware that "the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation" or that "the constitutional injury was caused by the failure to implement the supervisory procedure." It is not enough for Ford to allege he was dissatisfied with the treatment provided by the contracted medical providers in the jail and that the non-medical prison officials did not respond to his complaints. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (non-medical prison officials are not deliberately indifferent simply because "they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."). The Court also dismisses CFG Chief Executive Officer Les Paschall as a defendant because Petitioner did not allege his personal involvement in a constitutional violation. *See Iqbal*, 556 U.S. at 676 ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") Dismissal of Paschall is without prejudice.

    4.    <u>Retaliation</u>

Ford's retaliation claims may proceed against Nurse April, Nurse Mary and Nurse Davis. *See Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282–83 (3d Cir. 2004) ("[a]ll speech is protected by the First Amendment" except narrow categories that are entitled to no protection, including obscenity and 'fighting words'"); *Watson v. Rozum*, 834 F.3d 417, 422-23 (3d Cir. 2016) (filing a grievance and informing prison officials of intent to file grievance are protected under the First Amendment); *see Dews v. Pa. Dep't of Corr.*, Civ. Action No. 14-3048, 2015 WL 1033275 at *5

(E.D. Pa. Mar. 9, 2015) ("[w]ithholding medical treatment may constitute an adverse action likely to deter a prisoner from filing additional grievances.")

In support of his retaliation claims against Dr. O'Conner and Dr. Risbey, Ford alleges that "[b]oth Doctors O'Conner and Risbey have been threatening Ford with retaliation and intimidations." (ECF No. 1-5 at 3, ¶4b.) He further alleges they threatened him "with retaliatory behavior if he continued to pursue his quest for appropriate and effective medical care conducive to the finding of the CATSCAN of 4/28/2017 at East Orange General." (*Id.* at 4, ¶6.)

In order to state a retaliation claim under the First Amendment, Ford must allege "'(1) that he engaged in constitutionally protected conduct; (2) that an adverse action was taken against him by prison officials sufficient to deter him from exercising his constitutional rights; and (3) that there is a causal link between the exercise of his constitutional rights and the adverse action taken against him.'" *Humphrey v. Sec. of Pa. Dep't of Corr.*, No. 15-3250, 2017 WL 4736687, at *2 (3d Cir. Oct. 20, 2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). The adverse action must be sufficient to deter "a person of ordinary firmness." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012) ("whether an adverse action is 'sufficient to deter a person of ordinary firmness from exercising his constitutional rights' is an objective inquiry and ultimately a question of fact") (quoting *Rauser*, 241 F.3d at 333.) Ford's allegations that Dr. Risbey and Dr. O'Conner have threatened him with "retaliatory behavior" are insufficient to describe an adverse action that would deter a person of ordinary firmness from exercising his constitutional rights. Plaintiff must describe the specific threats that were made. Therefore, the First Amendment retaliation claims against Dr. Risbey and Dr. O'Conner are dismissed without prejudice for failure to state a claim.

D. <u>Conspiracy under 42 U.S.C. § 1985</u>

Ford alleges Nurse April and Nurse Davis "held back on" Ford's medications because Ford told his family members to call the jail and complain about his medical care. (ECF No. 1-5 at 3, ¶4b.) Ford then alleges, "Nurse Mary joined the conspiracy and limited my meds from three (3) a day to twice (2) a day." (*Id.*) The Court liberally construes these allegations as raising a conspiracy claim under 42 U.S.C. § 1985(3).

42 U.S.C. § 1985(3) provides:

> (3) Depriving persons of rights or privileges
>
> If two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

The elements necessary to plead a claim of conspiracy under 42 U.S.C. § 1985(3) are:

> (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

*Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) (quoting *United Brotherhood of Carpenters and Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971). Ford has not alleged sufficient facts suggesting there was a conspiracy among the nurses or that the conspiracy was motivated by racial or class based discriminatory animus. *See Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972) ("[w]ith near unaminity, the courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights under § 1985(3)"); s*ee Grigsby v. Kane*, 250 F.Supp.2d 453, 458 (M.D. Pa.

17

2003) ("only allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient"). Therefore, insofar as the Court construes the complaint to raise a claim under 42 U.S.C. § 1985(3), the claim is dismissed without prejudice for failure to plausibly plead the claim.

III. MOTION TO APPOINT PRO BONO COUNSEL

Plaintiff submitted an application for pro bono counsel under 28 U.S.C. § 1915(e)(1) with his complaint. (ECF No. 3.) Plaintiff asserts he needs assistance with discovery and with presentation of the medical and legal issues. (*Id.*) Indigent litigants in civil cases do not have a statutory right to appointed counsel. *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, 28 U.S.C. § 1915(e)(1) provides that "[t]he court may request an attorney to represent any person unable to afford counsel."

In determining whether to request an attorney to represent an indigent civil litigant, a court must first consider whether the Plaintiff's claims have "some merit in fact and law." *Id.* at 155 (quoting *Maclin v. Freake*, 650 F.2d 885, 887 (7th Cir. 1981) (quoting *Spears v. United States*, 266 F.Supp. 22, 25–26 (S.D. W. Va. 1967)). Taking Plaintiff's allegations as true, the claims against the Nurse Defendants have some merit and will be permitted to proceed past screening pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

Once a court determines that a plaintiff has a colorable claim, the court should consider a variety of factors in determining whether to request an attorney to represent the plaintiff. *Id.* Those factors include the plaintiff's ability to present his or her case; the difficulty of the particular legal issues; the ability of the plaintiff to pursue an investigation; whether extensive discovery may be required; and whether witness credibility is a key. *Id.* at 156. "[A]ppointment of counsel under §

1915(d) may be made at any point in the litigation and may be made by the district court sua sponte." *Id.*

At this early stage in the litigation, the factors do not favor appointment of counsel. The Court is permitting the complaint to proceed only against three defendants whom Plaintiff alleges intentionally withheld his pain medication in retaliation for his complaints. This claim is not factually or legally complex, and Plaintiff was able to effectively communicate the claims in his Complaint. Therefore, the Court denies the motion to appoint pro bono counsel without prejudice. Plaintiff will be permitted to submit an amended complaint, and he may renew his motion to appoint pro bono counsel if additional claims are permitted to proceed or circumstances otherwise change.

IV. CONCLUSION

For the reasons set forth herein, Ford's Fourteenth Amendment inadequate medical care and First Amendment retaliation claims may proceed against the Nurse Defendants. Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court dismisses the Fourteenth Amendment conditions of confinement claims against Warden Green and County Executive Divencenzo with prejudice; dismisses the Fourteenth Amendment inadequate medical care claims against John Doe and Jane Doe medical providers at East Orange General Hospital with prejudice; dismisses Defendant CFG Chief Executive Officer Les Paschall without prejudice; dismisses the Fourteenth Amendment inadequate medical care claims against Warden Green, County Executive Divencenzo, Dr. Risbey and Dr. O'Conner without prejudice; dismisses the First Amendment retaliation claims against Dr. Risbey and Dr. O'Conner without prejudice; and dismisses the § 1985(3) conspiracy claims against the Nurse Defendants without prejudice. To be clear, with prejudice means that Plaintiff cannot brings those claims again. Without prejudice means that the

claims are currently deficient, but Plaintiff has an opportunity to re-allege them in a manner that is legally adequate.

An appropriate Order follows.

Dated: October 31, 2017
At Newark, NJ

s/ John Michael Vazquez
JOHN MICHAEL VAZQUEZ
United States District Judge